In re Tyco (Kozlowski 03-1343)        MD-02-1335-B  03/16/04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**In re Tyco International, Ltd.**
**Multidistrict Litigation (MDL 1335)**

MDL DOCKET NO. 02-1335-B
**TYCO-PLAINTIFF ACTIONS**
Case No. 03-1343-B

Opinion No. 2004 DNH 048

MEMORANDUM AND ORDER

Tyco International, Ltd. has sued its former Chief Executive Officer L. Dennis Kozlowski for fraud and breach of fiduciary duty.  One of the complaint's several counts seeks a declaratory judgment that Kozlowski fraudulently induced Tyco to enter into a "Retention Agreement" that guaranteed Kozlowski substantial benefits if he was terminated.  The Retention Agreement contains an arbitration clause which provides that "[a]ny dispute or controversy under this Agreement shall be settled exclusively by arbitration in accordance with the rules of the American Arbitration Association then in effect."  Kozlowski moves to compel arbitration based on his assertion that all of Tyco's

claims are subject to the arbitration clause.  In the alternative, Kozlowski moves to dismiss the eighth cause of action, a breach of contract claim, and the twelfth cause of action, a contribution claim.

## I.

Kozlowski first argues that I cannot determine which, if any, of Tyco's claims are arbitrable because the Retention Agreement reserves such questions for the arbitrator.  Because Kozlowski's argument runs counter to the presumption that the court should resolve arbitrability issues, I will accept his argument only if the Retention Agreement "clearly and unmistakably" provides that arbitrability issues should be resolved by an arbitrator rather than the court.  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)(quoting AT & T Techs., Inc. v. Communications Workers, 475 U.S. 643, 649 (1986).

Kozlowski bases his argument on the Retention Agreement's arbitration clause, which states that "[a]ny dispute or controversy under this Agreement shall be settled exclusively by

2

arbitration in accordance with the rules of the American Arbitration Association then in effect." (Mot. of Def. to Dismiss or Stay & Compel Arb. Ex. A ¶ 18.) He then cites Rule 8 of the applicable American Arbitration Association ("AAA") rules, which provides that "the arbitrator shall conduct an Arbitration Management Conference with the parties . . . to explore and resolve matters that will expedite the arbitration proceedings. The specific matters to be addressed include: (i) the issues to be arbitrated . . . ." (Mot. of Def. to Dismiss or Stay & Compel Arb. Ex. B ¶ 8.) Because the Retention Agreement incorporates an AAA rule that requires the arbitrator to discuss the "issues to be arbitrated" at an Arbitration Management Conference, Kozlowski claims that the Retention Agreement clearly and unmistakably requires arbitrability questions to be resolved by the arbitrator. I disagree.

Rule 8 requires the arbitrator to convene an Arbitration Management Conference "[a]s soon as possible" after the arbitrator is appointed. The stated purpose of the conference is "to explore and resolve matters that will expedite the

3

arbitration proceedings."   The rule then lists 12 specific matters to be discussed at the conference, including "the issues to be arbitrated."[1]  Kozlowski views Rule 8 as a grant of authority  to the arbitrator to resolve all arbitrability questions as well as to control the other matters identified in the rule.  A review of the rule in context, however, reveals that it merely identifies issues that must be discussed at the conference without granting the arbitrator any additional power that she does not otherwise have under the Retention Agreement itself or other AAA rules.

Although Rule 8 lists items to be discussed at the Arbitration Management Conference, the arbitrator's authority over each of the identified items is established by a counterpart elsewhere in the rules.  Two examples illustrate the point.  Rule

---

[1] The 12 matters to be discussed include (i) the issues to be arbitrated; (ii) the date, time, place, and duration of the hearings; (iii) the resolution of outstanding discovery issues; (iv) the applicable rules of evidence and burdens of proof; (v) the exchange of stipulations; (vi) witness names and scope of their testimony; (vii) bifurcation of the proceedings into liability and damages phases; (viii) the need for a stenographic record; (ix) the need for oral argument; (x) the form of the award; (xi) any other issues relating to the subject or conduct of the arbitration; and (xii) the allocation of attorney's fees.

8 requires the arbitrator to discuss outstanding discovery issues at the conference but the arbitrator's power to control discovery is found in Rule 7, which provides in pertinent part that "[t]he arbitrator shall have the authority to order such discovery . . . as the arbitrator considers necessary . . . ." Similarly, Rule 8 requires the arbitrator to discuss "the date, time, place and estimated duration of the hearing" but the arbitrator's power to determine disputes concerning these matters is found in Rule 10 which provides that "[t]he arbitrator shall have the authority to set the date and time of the hearing in consultation with the parties." Each of the other items listed in Rule 8 has a similar counterpart elsewhere in the rules that explicitly defines the arbitrator's authority with respect to that item.[2]

---

[2] The authority to allow a new or different claim or counterclaim after the appointment of the arbitrator is set out in Rule 5; to determine the date, time, and place of the hearing is in Rule 9 and 10; to resolve discovery issues is in Rule 7; to determine the standards of proof, applicable law, witness names and scope of their testimony, and to exercise authority over the presentation of evidence is in Rule 22; to determine to bifurcate the proceedings is in Rule 24; to set oral argument is in rule 30; to determine the form of the award is in Rule 34(d); to set the rules of conduct for the proceedings is in Rule 22; and to award attorney's fees is in Rule 34(e).

Rule 5 is the counterpart to Rule 8's listing of "the issues to be arbitrated" as an issue to be discussed at the Arbitration Management Conference. It describes the procedures that the parties must follow when amending arbitration claims and gives the arbitrator the power to reject new or different claims that are filed after the arbitrator is appointed. Nowhere do the rules grant the arbitrator the exclusive power to resolve other arbitrability disputes. Thus, while Rule 8 requires the arbitrator to discuss the issues to be arbitrated at the conference, the power to resolve arbitrability questions, apart from the power to reject claims that are filed after the arbitrator is appointed, must be found in the parties' agreement to arbitrate. Because the Retention Agreement does not clearly and unmistakably give such power to the arbitrator, I reject Kozlowski's claim that the arbitrator must resolve the arbitrability issues that his motion to compel presents.

## II.

Kozlowski alternatively argues that I should determine that all of Tyco's claims are subject to arbitration. I have

6

previously considered identical arguments supporting Mark Belnick's request for arbitration under an identical arbitration clause.  See In re Tyco Int'l Inc. Multidistrict Litig., Opinion No. 2003 DNH 228.  Rather than repeat my analysis, I find that Tyco's fraudulent inducement claim is arbitrable but that its remaining claims are not for the reasons I articulated in that Order.  I also reject Kozlowski's request to stay the litigation of the nonarbitrable claims.[3]

---

[3] Tyco makes a waiver argument that is slightly more developed here than in the prior Belnick proceeding and so I address it briefly.  The crux of Tyco's argument is that Kozlowski's delay in seeking arbitration for sixteen months from the time of his employment termination, and a delay of over a year since Tyco first filed this suit against him, waives his rights under the arbitration agreement.  I disagree.

In determining whether a party has waived its arbitration rights I must be mindful that any doubts as to arbitrability "should be resolved in favor of arbitration, whether the problem at hand is . . . an allegation of waiver, delay, or a like defense to arbitrability."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983)("'[W]aiver is not to be lightly inferred, and mere delay in seeking [arbitration], without some resultant prejudice to a party cannot carry the day'" (citing Rush v. Oppenheimer & Co., 779 F.2d 885 (2d Cir. 1985)); Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 806 F.2d 291, 293 (1st Cir. 1986); see also Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28 (1st Cir. 2001).  Tyco fails to assert any prejudice caused by Kozlowski's delay in seeking arbitration and therefore fails to establish that Kozlowski waived his arbitration rights.  Given the slow progress of litigation in the civil proceedings to date, Tyco would be

## III.

Kozlowski's next argument challenges the sufficiency of Tyco's breach of contract claim under Fed. R. Civ. P. 12(b)(6). Kozlowski contends that the complaint merely asserts that he breached the Company's Key Employee Loan ("KEL") Program, and does not allege that he breached a valid contract. Again, I disagree.

In considering a Rule 12(b)(6) motion, I "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). The pleadings must give the defendant fair notice of what the claims are and the grounds on which they rest. E.g., Persson v. Scotia

_____

hard pressed to establish that a delay of only sixteen months has produced sufficient prejudice to warrant a waiver of Kozlowski's arbitration rights. See Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 61 (1st Cir. 2003) ("The length of delay must be evaluated in the context of litigation activities engaged in during that time."). For these reasons, I reject Kozlowski's waiver argument.

8

Prince Cruises, Ltd., 330 F.3d 28, 34 (1st Cir. 2003). With this in mind, I evaluate Tyco's breach of contract claim.

In order to establish a breach of contract, the complaint "must allege (1) the existence of a valid and binding contract; (2) that plaintiff has complied with the contract and performed his own obligations under it; and (3) breach of the contract causing damages." Id. The complaint alleges these exact requirements. Tyco alleges that Kozlowski bound himself to the terms of a loan program by accepting the loans and breached those terms by not repaying the loans upon the termination of his employment. In other words, the complaint argues that a valid and binding contract existed whereby Kozlowski agreed to repay any outstanding loans made by Tyco under the program upon the end of his employment. Tyco gave Kozlowski the loans, thereby fulfilling its obligation under the contract, and Kozlowski breached the contract by not repaying the loans, resulting in damages to Tyco in the amount of the unpaid loans. The complaint directs Kozlowski to the appropriate loan agreement, the KEL Program, and the amount of unpaid loans ($43,840,461). The complaint asserts enough to easily satisfy Rule 12(b)(6) by

9

alleging a breach of contract, even if Tyco does not call the breached agreement a contract per se. See, e.g., Carroll v. Kahn, No. 03-CV-0656, 2003 WL 22327299, at *4 (N.D.N.Y. Oct. 9, 2003) (complaint found sufficient that asserted an agreement had been made and then breached without referring to it as a contract per se). I therefore deny Kozlowski's motion to dismiss the breach of contract claim under Rule 12(b)(6).

**IV.**

Kozlowski also argues that Tyco's contract claim is unripe because it is contingent upon the outcome of the ERISA, Securities, and Derivative Actions pending against it. I disagree.

A federal court may entertain only claims that involve actual justiciable controversies. See Ala. Fed'n of Labor v. McAdory, 325 U.S. 450, 461 (1945). These controversies must be "definite and concrete, touching the legal relations of parties having adverse legal interests. [They must be controversies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law

10

would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). Therefore, the "disagreement [between the litigants] must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Pub. Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 244 (1952).

The Court has gone even further by declaring that the issue of ripeness turns on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983) (internal quotations omitted). The ripeness inquiry, however, is case specific, "and the various integers that enter into the ripeness equation play out quite differently from case to case." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995) ("The ripeness inquiry is often sui generis.").

This circuit has held in a similar circumstance that a contribution claim is ripe, even if it is contingent on a

11

separate finding of liability, as it is here.  D'Onofrio Constr. Co. v. Recon Co., 255 F.2d 904 (1st Cir. 1958).  In D'Onofrio, the court stated:

> But if the event has already occurred out of which a common liability may be asserted to have arisen, and if the injured party has already commenced an action against one of the possible joint tortfeasors, one cannot deny that a case or controversy in a constitutional sense has already come into existence as between the defendant sued and the other possible joint tortfeasor who is under a contingent obligation to make contribution.

Id. at 909.  While D'Onofrio dealt with joint tortfeasors and a contingent contribution claim, its principle applies equally to Tyco's contingent contribution claim against Kozlowski.

Likewise, in Lehman v. Revolution Portfolio LLC, the First Circuit held that impleading a third-party defendant on theories of indemnification and contribution presented justiciable claims even though the claims were contingent upon the defendant being found liable to the plaintiff in the underlying suit.  166 F.3d 389 (1st Cir. 1999).  In so far as a claim for contribution against an impleaded third-party defendant is ripe, that same claim is also ripe outside the impleader context.

12

I agree with Tyco that its claim for contribution is a "real, immediate and concrete controversy among true adversaries which is ripe for resolution." Avemco Ins. Co. v. Pond, No. 94-CV-073-B, 1994 WL 516449, at *2 (D.N.H. Sept. 20, 1994). Tyco currently faces multiple lawsuits for extraordinary damages stemming, arguably, from Kozlowski's alleged breach of fiduciary duties. The facts underlying Kozlowski's alleged liability for contribution will be developed in the present litigation and Tyco and Kozlowski are clearly adverse parties. With this in mind, Tyco's contribution claim against Kozlowski is fit for judicial review.[4]

## CONCLUSION

For the reasons set forth in this Memorandum and Order, I grant Kozlowski's request to compel arbitration of Tyco's fraudulent inducement claim and otherwise deny its request to either compel arbitration of Tyco's remaining claims or to stay the litigation of those claims until the fraudulent inducement

---

[4] A damage award on the contribution claim can always be deferred until Tyco's liability in the underlying suits is finally established, if in fact it ever is. See Oxford Shipping Co. v. N.H. Trading Corp., 697 F.2d 1, 8 (1st Cir. 1982).

13

claim is resolved (doc. no. 6).  I also deny Kozlowski's motion to dismiss the breach of contract and contribution claims.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 16, 2004

cc:  Counsel of Record